# HOTEL UTAH CO. v. INDUSTRIAL COMMISSION

No. 7212.   Decided August 17, 1949.   (209 P. 2d 235.)

See 56 C. J. S., Master and Servant, sec. 28(34).   Collective bargaining, generally, see note, 169 A. L. R. 1326.   See, also, 31 Am. Jur. 872.

Rehearing denied December 20, 1949.

*Callister, Callister & Lewis,* Salt Lake City, Utah, for plaintiff.

*Grover A. Giles,* Atty. Gen., *Herbert F. Smart,* Asst. Atty. Gen., *J. Arthur Bailey,* Salt Lake City, for defendants.

WADE, Justice.

The Hotel Utah Company brings this matter to this court by writ of certiorari to determine whether it is guilty of an unfair labor practice in refusing to bargain collectively with the Hotel and Restaurant Employees Alliance, Local 815. It claims that the evidence presented to the board is not sufficient to sustain a finding of what constitutes and a designation of an appropriate unit of employees for collective bargaining purposes, and that the board failed to make sufficient findings of fact as required by law and that therefore its order to cease and desist is void.

On March 4, 1948, on the petition of the Hotel and Restaurant Employees Alliance, Local 815, a hearing before a commissioner of the Utah Labor Relations Board was held. At such hearing both the hotel and the local were represented and produced evidence and on March 8th the board ordered an election to be conducted during the week of March 10th and 17th to determine the collective bargaining agent among the following unit:

"All employees within the following classifications: Bellboys, porters, elevator operators, baggage checkroom attendants, doormen, page boys and valets, excluding front office employees, clerks, housekeeping department employees, culinary and banquet department employees, garage employees and all supervisory employees with authority to hire and fire such as superintendent of service, head porters, etc."

Later at the request of the hotel the board clarified its order defining the word "etc." as used therein as follows:

"It is the intent of the Board that 'etc.' means any other supervisory employee with related authority as is designated to the superintendent of service and the head porter by the above respondent."

On March 10th, the election was held wherein 39 out of 42 employees within that unit voted for Local No. 815 to act as their bargaining agent and on March 18th the board so certified. On March 31, 1948, the hotel moved the board to set aside and vacate the certification, and petitioned the board to continue its investigation as to what constitutes an appropriate unit for collective bargaining purposes in which it offered to produce evidence on that question to assist the board therein. At the previous hearing the hotel had intentionally refrained from producing such evidence. On April 12th this motion and petition were denied. On May 12, 1948, Local No. 815 filed a charge with the board that the hotel had refused to bargain collectively with it, and a complaint to that effect was filed and the hotel answered claiming that no appropriate bargaining unit had been found and therefore it was not required to bargain with petitioner. On June 28, 1948, a hearing on this petition was had before an examiner at which hearing the hotel admitted it refused to bargain collectively for the reasons stated in its answer. The examiner made his report thereon in which he made findings of fact and recommended that the hotel be ordered to cease and desist; to this report the hotel filed its objections on July 23, 1948. On July 27, 1948, the board denied these objections, adopted the examiner's findings of fact and report and ordered the hotel to cease and desist from refusing to bargain collectively with the petitioner. To reverse this order the hotel brings the matter to this court.

The hotel claims that the board has not made sufficient investigation and has not received sufficient evidence from which it could determine what constitutes an appropriate

collective bargaining unit. It does not ask that the orders or findings be modified as it might have done under (e) and (f) Sec. 49-1-18, U. C. A. 1943. It placed its case squarely on its claim that the proceedings before the board are a nullity and must be set aside by this court.

Under Sec. 49-1-9, U. C. A. 1943, as amended by S. L. '47 c. 66, sec. 1, p. 333, it is the declared policy of the state as to employment relations and collective bargaining that it "recognizes that there are three major interests involved, namely: That of the public, the employee and the employer,"

and

"to protect and promote each of these interests with due regard to the situation and the rights of the others."

Sec. 49-1-15, as amended by Session Laws 1947, Ch. 66, Sec. 1, p. 335 provides:

"Employees shall have the right to self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection; and such employees shall also have the right to refrain from any or all of such activities."

Section 49-1-16 (d), U. C. A. 1943, as amended by Session Laws 1947, Ch. 66, Sec. 1, p. 335, declares it to be an unfair labor practice for an employer

"(d) To refuse to bargain collectively with the representative of a majority of his employees in any collective bargaining unit; * * *."

Under Sec. 49-1-17, U. C. A. 1943,

"(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining * * *"

and that section further provides:

"Appropriate Unit. (b) The board shall decide in each case whether, in order to insure to employees the full benefit of their

right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

"Questions Affecting Intrastate Commerce. (c) Whenever a question affecting intrastate commerce or the orderly operation of industry arises concerning the representation of employees, the board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 11 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.

"Id. Review—Transcript. (d) Whenever an order of the board made pursuant to section 11(c) is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section, and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsections 11(e) or 11(f), and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the board shall be made and entered upon the pleadings, testimony and proceedings set forth in such transcript."

## Section 49-1-18, U. C. A. 1943, provides:

"Unfair Practices—Powers of Board to Prevent. (a) The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 9) affecting intrastate commerce or the orderly operation of industry. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law or otherwise."

## Subdivision (b) provides for a hearing and the procedure thereunder and the section further provides:

"(c) * * * If upon all the testimony taken the board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the board shall state its findings of fact and shall issue and cause to be served on such preson an order to cease and desist from such unfair labor practice, * * *.

"Time in Which Board May Modify Order. (d) Until a transcript of the record in a case shall have been filed in a court, as herein-

after provided, the board may at any time, upon reasonable notice and in such manner as it may deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it."

Under Sec. 49-1-17 (b), the board must in each case,

"in order to insure to employees the full benefit of their right to self organization and to collective bargaining and otherwise effectuate the policies of this act,"

decide what is the appropriate unit for collective bargaining purposes. But there is no express provision for any hearing or investigation in order to determine that question, nor does the act specify the facts which shall be necessary or controlling therein. Neither is there any provision in the statute for findings of fact or for a written decision. But (c) which deals with the determination of the collective bargaining agent expressly provides for an investigation and hearing and if necessary an election in order to select and certify in writing to the parties the names of the representatives of the employees for collective bargaining purposes where a controversy thereon arises; and under (d) the record of such investigation must be certified to this court if the matter is brought here for review. However, there is no provision under such investigation and hearing for the making of findings of fact by the board. But under Sec. 49-1-18, dealing with unfair labor practices the board is required to have a hearing with notice and pleadings, the testimony must be reduced to writing and if the board is of the opinion that the person charged therewith is engaging in unfair labor practices it must state its findings of fact and issue and serve on the offending party its order to cease and desist.

The hotel argues that the provisions of Sec. 49-1-18, dealing with unfair labor practices, and requiring formal pleadings, hearings and written findings of fact, apply equally to the proceedings of the board in determining what is an appropriate collective bargaining unit ■ under (b) of Sec. 49-1-17, and for the formal hear-

ing provided for under (c) and (d) of that section in determining and certifying to the parties the names of the collective bargaining agents. These statutes do not expressly so provide nor are there any circumstances which indicate that such was the legislative intention. Under those provisions it is evident that in determining the appropriate bargaining unit and designating the bargaining agent the legislature did not intend to require the same formality in the hearings and pleadings that it did in whether an unfair labor practice had occurred, and did not intend to require on the former hearings written findings of fact. The hearing on the question of an unfair labor practice was before an examiner who made written findings of fact covering the whole matter in detail with recommendations. Later, after a hearing by the board, it adopted those findings and these findings are a part of the record in this case. All of the requirements of those statutes on these three hearings were fully complied with and we find no error therein. Otherwise we express no opinion on the kind, extent or formalities required in such hearings.

The hotel was given every opportunity at the hearings to determine the appropriate bargaining unit and to designate the bargaining agent. In those hearings it produced no substantial evidence but relied on the weakness of the opposition's evidence. Under such circumstances all that we need determine is whether a prima facie case has been established. We have carefully reviewed the evidence and conclude that such case has been established. The objects of such hearings under (b) of sec. 49-1-17, are

"to insure to employees the full benefit of their right to self organization and to collective bargaining, and otherwise to effectuate the policies of this act, and in doing so it must determine whether the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

The last provision of that quotation expressly authorizes the board to subdivide the employer's craft or plant unit into an appropriate bargaining unit.

From a reading of the designation of the unit, it is clear that it does not include all of the employees of the hotel and that those who are included are persons performing a similar or related kind of service. It includes bellboys, porters, elevator operators, baggage checkroom attendants, doormen, page boys and valets. It excluded front office employees, clerks, housekeeping department employees, culinary and banquet department employees, garage employees, and all supervisory employees with authority to hire and fire. The petitioner's evidence designated the unit as the service department or house service department. It was freely admitted that other departments rendered services but of a different nature. It is clear from the signed cards and the voting that the members of the designated unit almost unanimously desired to organize and to bargain collectively with the employer. The board might well infer from the evidence that a majority of the employees in other departments did not desire to so organize, but that the unit designated constitutes a homogeneous unit of employees rendering similar kinds of service, and that it was a convenient subdivision of the employees of the hotel and was a suitable and appropriate unit for collective bargaining purposes. Although the board might have required more detailed evidence on the surrounding conditions and labor relations history in this hotel and other similar institutions, the evidence was sufficient to make a primia facie case and sustain the decision of the board.

The decision of the board is sustained and affirmed, and the Hotel and Restaurant Employees' Alliance Local No. 815, is awarded its costs.

McDONOUGH, J., concurs.

PRATT, C. J., dissents.


WOLFE, Justice (concurring in the result).

I concur in the result. The hotel challenges the constituents of the bargaining unit. I need express no opinion at

this time as to whether a hearing is necessary in order to designate the constituent elements of a bargaining unit because I take the view expressed by Mr. Justice Latimer that

"the Hotel Company was afforded a full and fair opportunity, after due and proper notice to produce evidence in support of any contention it might have as to who should be included in the collective bargaining unit  *  *  *."

I do not think the board was arbitrary in designating as it did the groupings of employees as constituting an appropriate bargaining unit, especially in view of the fact that there was no evidence to show such designation to be incongruous and the Hotel Company had shown no timely objection to such grouping even though a more logical and homogeneous unit might have been selected. There was no splitting of those within a single job classification. There is, of course, a difference in the type of services rendered by the hotel valet as compared to a bellboy or a porter or a doorman, but in the absence of a timely protest by the Hotel Company when it was given opportunity to point out wherein it thought the lumping of different job classifications into a single unit would bring together classifications with job contents not sufficiently similar or related for aptness in bargaining, it cannot complain because the Board in the absence of such solicited advice drew the inclusion-exclusion line so as not to include classifications totally dissimilar. The factors it took into consideration in drawing the inclusion-exclusion line seemingly were reasonable and practical in view of its research. Where an industry has comparatively few employees answering to a number of different job classifications, the situation may not lend itself to forming a bargaining unit for each classification as might be the case where the industry had many employees and the classifications were so marked in their differences as to make it appropriate that each classification or only closely related classifications be included in a single unit. The

designation of the unit must subserve the exigencies of the situation. I cannot say that it did not do so in this case.

LATIMER, Justice (concurring in the results).

I concur in the results.

The Utah Labor Relations Board apparently interpreted Section 49-1-17(c), U. C. A. 1943, to require a hearing on the petition to determine the appropriate unit to represent the employees in the service department. In accordance with this interpretation, the Board scheduled a hearing and prepared a petition showing the number and classification of employees in the bargaining unit which the petitioner, Hotel & Restaurant Employees Alliance, alleged to be appropriate. A copy of the petition was served on the Hotel Utah. Accompanying the petition was a notice to the Hotel to appear on March 4, 1948, and advocate or defend any interest it might have in the determination of the question of who should be included in the appropriate unit.

In view of the language of Section 49-1-17(c) of the act, and the principal that both parties to a controversy should be afforded an opportunity to be heard, I believe the provisions of that section should be interpreted to require a hearing on any controversy that effects both employer and employee. However, a determination of this question is unnecessary as in this case we need go no further than to hold that the Board—having interpreted the act in a way beneficial to the Hotel—granted the Hotel Company all the rights to which it was entitled and the company cannot complain because the Board was not more formal in the manner in which it conducted the hearing and in the way it determined the unit which it considered appropriate.

At the time of the hearing set by the Board, both parties appeared and the Hotel & Restaurant Employees Alliance produced evidence that the inclusions and exclusions listed in the petition for investigation were classifications which should be included in or excluded from the service depart-

ment. While the Hotel Company contended in subsequent proceedings before the Board and contends in this court that the classification is erroneous, at the time of the hearing on the petition, it offered no evidence to the contrary and rested its case without making any contention that the evidence was insufficient to justify a finding by the Commission. It was only after the Commission had ordered an election to be held, the results of the election had been determined and the Board had rendered its decision certifying the Hotel & Restaurant Employees Alliance as the bargaining agency that the Hotel Company protested the selection of the classes of employees which was included in the appropriate unit and then the company moved to set aside the previous orders of the Commission for the reason that they were based upon the acts of a unit which was designated by the Board without sufficient evidence to justify the designation. In connection with this motion, the Hotel Company petitioned the Board for an opportunity to assist in conducting a further investigation, the investigation to consist primarily of hearing the Hotel Company's evidence of what classes should be included in an appropriate unit.

It is my opinion that there was sufficient evidence to justify the procedure of and orders made by the Board; and that the Board did not abuse its discretion in not granting the Hotel Company the right to produce evidence at a subsequent hearing. The Hotel Company was afforded a full and fair opportunity, after due and proper notice, to produce evidence in support of any contention it might have as to who should be included in the collective bargaining unit, but it elected to rely entirely on the weakness of petitioner's case. There was no contention advanced in the subsequent petitions that the evidence, which the Hotel Company then offered to produce, was not readily available to the company at the time of the original hearing. The record is convincing that the Hotel Company in the original hearing adopted a policy that it need not produce any evi-

dence to assist the Board, it need only protest any action taken by the Board.

Even though the proceedings before any administrative body may be more or less informal, they must be orderly and there must be a limit to the time when issues can be raised or litigated. The Hotel Company, having refused to produce evidence at the time of the original hearing, may not now assail the orders of the Board unless there is a total absence of evidence to sustain the action taken by the Board. Findings of the Board as to the facts are conclusive if supported by any substantial evidence. The evidence produced by the Hotel & Restaurant Employees Alliance did not meet the standards contended for by the company, but it was uncontradicted and not weakened in any particular by contrary evidence. Standing alone it is sufficient to support the order of the Board.

It is not contended that the Board divided the same kind of Service. The contention is that some classes of employees who might have been included in the service department are excluded and that certain other classes of employees included should have been excluded. There is, however, no evidence from which the Board or this court could conclude how exclusion of some of the included groups or inclusion of other groups would make the unit more appropriate. The classifications dealt with by the Board are readily determinable and appear to be reasonably connected with the service department. There appears to be sufficient mutuality of interests in wages, hours, working conditions and the like to justify the Board in grouping all in a single unit. Such being the case, I conclude that the petitioner's contentions should be overruled.