# HOTEL UTAH CO. v. INDUSTRIAL COMMISSION et al.

No. 7290.   Decided November 4, 1949.   (211 P. 2d 200.)

See 56 C. J. S., Master and Servant, sec. 28(109). Findings in labor dispute by administrative board, see note, 146 A. L. R. 123. See, also, 58 Am. Jur. 879.

*Callister, Callister & Lewis,* Salt Lake City, for plaintiff.

*Clinton D. Vernon,* Attorney General, *Mark K. Boyle,* Assistant Attorney General, for defendant Labor Relations Board.

*Clarence M. Beck, Reid W. Nielson,* Salt Lake City, for defendant Laundry Workers Local Union No. 316.

LATIMER, Justice.

This case comes to us upon a writ of certiorari to review an order of the Utah Labor Relations Board requiring the

petitioner, Hotel Utah Company, to cease and desist from any further unfair labor practice and to enter into collective bargaining with defendant Laundry Workers Local Union No. 316. Hereinafter, the Utah Labor Relations Board will be designated as the Labor Board; the Hotel Utah as the Company, and the Laundry Workers Local Union No. 316 as the Union.

On June 15, 1948, the Union filed a petition with the Labor Board in which it was alleged that a question had arisen concerning the representation of thirty-five employees engaged in laundry work for the Company; that the petitioner desired the Board to investigate the alleged controversy as provided by 49-1-17(c), U. C. A. 1943, as amended, and to certify to the Union and to the Company the name or names of the representatives designated or selected by the laundry employees as their bargaining representative; and that the unit should include all laundry production workers and exclude clerical workers and supervisors with power to hire and fire.

Section 49-1-17(c) supra, provides as follows:

"Whenever a question affecting intrastate commerce or the orderly operation of industry arises concerning the representation of employees, the board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected In any such investigation, the board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 11 or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives."

Pursuant to the request contained in the petition, the Board notified the Company and the Union to appear before its trial examiner on June 24, 1948, to advocate or defend any interest either might have on the question of the representation of the Company's laundry workers. It was not until July 12, 1948, however, that a hearing was held. On the latter date, the Union offered in evidence exhibits signed by a majority of the Company's thirty-five laundry workers

authorizing the Union to represent and bargain collectively with the Company on their behalf. In addition, the Union's international organizer of laundry workers was asked certain questions concerning his familiarity with organizing laundry units and whether the thirty-five laundry workers constituted an appropriate and proper unit for the purpose of collective bargaining. His answer was in the affirmative. At the conclusion of the hearing, the Board took the matter under advisement and on July 20, 1948, made and entered its order that the appropriate unit for collective bargaining include all production laundry workers and exclude clerical workers and supervisors with power to hire and fire. The Board further ordered a cross-check of the Company's payroll to determine whether the individuals who had executed the cards designating the Union as their representive were employees of the laundry and whether a majority of the workers had agreed upon such representation.

The Company protested and objected to the cross-check upon two grounds: First, that the employees whose signatures appeared on the exhibits introduced to show they had authorized the Union to represent them, did not know the purport of what they had signed; and second, that since the hearing, certain of these same employees had advised the Company that they did not know they had designated the Union as their representative and that they had not been told the real reason for signing the exhibit.

The cross-check, however, was made and on August 5, 1948, the Board certified the Union to be the sole collective bargaining representative with respect to rates of pay, hours of labor and other conditions of employment of all laundry production workers. The Company filed a motion to vacate the certification in which it contended that under 49-1-17(c), supra, the laundry employees were required to hold an election by secret ballot in order to select a bargaining representative and the Board could not legally make its certification on the basis of the cross-check. This motion was subsequently denied.

Thereafter, Union representatives contacted the management of the Company for the purpose of securing a collective bargaining agreement with respect to the wages, hours and working conditions of the Company's laundry workers. The Company refused to bargain for two stated reasons. It claimed first that the Board was in error in certifying the laundry workers as an appropriate unit, and second, that the certification was improper because an election had not been held.

On November 1, 1948, the Union filed a formal charge with the Board alleging that in refusing to bargain, the Company was guilty of an unfair labor practice under the Utah Labor Relations Act. The Union thereupon requested the Board to prepare and serve its complaint against the Company. The Board investigated the charge, issued its complaint and pursuant to 49-1-18, U. C. A. 1943, ordered a hearing.

At the hearing the Company's representative admitted he had refused to bargain with the Union and gave the same reasons for so doing to the Board as had been given to the Union, viz., that the laundry workers are not an appropriate unit and no secret ballot of employees had been provided for. The Board thereupon found against the Company and ordered it to cease and desist from any further unfair labor practice; that it enter into collective bargaining with the Union on behalf of the Company's laundry employees within fifteen days; and that the Company notify the Board of its compliance with that order. The propriety of that order is the matter before us now.

The Company first contends that this last order is void in that it is not supported by findings of fact as required by 49-1-18 (c), U. C. A. 1943. That statute, in part, provides:

"* * * the board shall state its findings of fact and shall issue and cause to be served on such person an order to cease and desist from such unfair labor practice * * *."

While the Board did not set out findings of fact as such, the order to desist provides that the findings of fact of the

trial examiner were concurred in by the Board and made the basis of its order. Prior to this, the Company had filed written objections to the findings made by the ■ trial examiner. The Company was thereby apprised of the facts relied upon by the Board and in a position to challenge the sufficiency of any of them. This being true, its contention that it has not been given an opportunity to assail the Board's findings as being unsupported by the evidence has no merit.

The Company next complains the Board erred in directing a cross-check of its payroll as a suitable method to ascertain the representative of a majority of the employees. In support of this argument, the Company has cited the following portion of 49-1-17 (c), supra:

"* * * In any such investigation, the board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under Section 11 or otherwise, *and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.*" (Italics ours.)

The statute expressly permits the selection of a bargaining representative by any suitable method. The legislature has given to the Board the power to ascertain the will of the majority of a given group of employees by means other than an election. Accordingly, the Com- ■ pany may not claim prejudicial error because an election was not held unless the Union was not selected as the laundry workers' representative by a suitable method. Individual authorization cards signed by a majority of the laundry workers designating the Union as their bargaining representative were offered in evidence at the original hearing. As an additional precaution, the Board ordered a cross-check of the laundry payrolls to verify the employer-employee relationship. The Company was afforded an opportunity to contact the signers of the cards and while it claimed certain of the employees misunderstood the purpose for and effect of the authorization, no evidence to this effect was produced. Under these circum-

stances, we cannot say that the Board failed to adopt a suitable method to determine who had been designated as the laundry workers' representative. We, therefore, conclude the Board did not abuse the discretion vested in it by the statute.

In sustaining the Board in the method used, we do not wish to be understood as intimating that other methods of determining representation are as appropriate as a secret ballot. The election method is a suggested means, and in our opinion, is the most effective way of obtaining an untrammeled expression of the desires of the employees. It is not difficult to imagine that in being canvassed by Union agents to sign an authorization card an employee is subjected to Union coercion or at least mental pressure by the agents or by other members more interested in the authorization. The same amount of freedom to exercise individual judgment is not afforded to the employee when the ballot box method is not used. There is little chance for undue influence when employees are entitled to a secret vote, and we commend this method to the Commission, particularly, where as here, the employer made a timely request for its use.

The Company next claims the Board erred in determining the unit appropriate for purposes of collective bargaining. Counsel has strenuously contended there is not sufficient evidence in the record from which the Board could reach any conclusion. The section of the Utah Labor Relations Act to which we are referred is 49-1-17(b), U. C. A. 1943. That subsection provides as follows:

"(b) The board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof."

In the first place, neither the investigation provided for in this section nor any hearing had in connection with the

designation of an appropriate unit, were designed to be contentious litigation, but rather investigatory proceedings. They are not adversary contests, such as actions at law. Their purpose is to assist the Board in determining whether an appropriate unit should be an employer unit, craft unit, plant unit or subdivision thereof. In requiring an investigation the legislature must have presupposed that some unit would be appropriate and the evidence to be obtained by the investigation and hearing is for the purpose of determining which unit will best insure to the employees the full benefit of the right to self-organization and to collective bargaining.

The authority to determine which type of unit is appropriate is vested in the Board and not this court. If the discretion so granted is reasonably exercised, the finding cannot be set aside. It is only in those cases wherein we can find the Board has abused its discretion that we may interfere. And if appellant seeks to reverse the finding of the Board because of an abuse of discretion in selecting the appropriate unit the burden is on it to establish the abuse.

Before deciding whether the Company's production laundry workers comprised a unit appropriate for purposes of collective bargaining, the Board called upon the interested parties to be present at a hearing and advocate or defend any interest either might have on this question. Both were present at the hearing but neither offered evidence on some factors which might be considered in connection with this issue. The Union's principal witness, an international organizer of laundry workers, testified that he was generally acquainted with the business of the Company; that it operated a laundry which was in an annex to the Company's Hotel building; that the Company's production laundry workers consisted of employees working in both the washroom and finishing departments of the laundry and these composed a unit such as he customarily organized; that in his opinion these laundry employees consti-

tuted an appropriate unit for purposes of bargaining with the Company; and that the employees concerned included girls and boys in the wash rooms and those that operated shakers, mangles, washing machines and pressers. The assistant manager of the Company testified there were approximately forty inside workers in the laundry; that there were other employees such as boys who delivered the laundry to and from other departments but that the names of these boys were not shown on the laundry payroll; and that the laundry workers mentioned in the certification were all carried as employees on the laundry payroll. This testimony was substantially all the evidence introduced by either party concerning whether the laundry workers constituted an appropriate bargaining unit. The Company has taken the position that this meager record rendered the Board helpless to decide whether the thirty-five to forty employees here involved constituted an appropriate unit. It has referred this court to reported decisions of the Federal Courts and United States Supreme Court holding that the National Labor Relations Board, under a provision of the Wagner Act identical to subsection (b) of 49-1-17, supra, properly considered the following factors in determining what unit was appropriate, viz., the history of collective bargaining and the history, extent and type of organization among the employees at the plant involved and at other plants of the same employer, or at plants of other employers in the same or related industries; the skill, wages, and working conditions of the employees; the desires of the employees; the eligibility of employees for membership in the Union or Unions involved; and the relationship between the unit or units proposed and the operation, organization, and management of the employer's business. Those cases are instructive of the type of evidence the parties in this action could have properly placed before the Board for its consideration on this question and it might be well for the Utah Labor Relations Board to provide for similar factors. However, the determination

of these factors is a matter for the Board and not for this court.

In attempting to justify its claim that the Board abused its discretion in designating the laundry workers as an appropriate unit, the Company has argued that the Board should be required to assume the role of an independent investigator searching into all of the various factors enumerated above before rendering its decision. In this connection counsel has stated his position in the following manner:

"We do not like to look at the Utah law as a method setting up machinery so that the employer, and the union and employees may fight it out. We like to look upon the Utah law as creating an impartial tribunal with its object in mind to dispose of the differences of the employer and the union in the most satisfactory way in order to create and maintain industrial peace; further, keeping in mind the fact that the public is a party in interest."

We think the Board did just what counsel claims it should have done. After the Union filed its petition, which, among other things, alleged that the bargaining unit should consist of the Company's thirty-five production laundry workers, the Board notified both parties to appear on June 24, 1948, to advocate or defend any interest either might have on this question. Before the Board should be burdened with the duty of disposing of differences, if any, existing between the employer and its employees, it is only reasonable to require each to inform the Board as to what differences actually exist between them. Although the Company objected to the designation of the laundry workers as a bargaining unit, it produced no evidence that the proposed unit was inappropriate or improper for collective bargaining. Its only contribution to the record was testimony that some years prior to the hearing the Board had included the laundry workers in a unit with other service department employees.

While there is no evidence touching on certain factors mentioned by appellant as guide posts for the Board, there

is evidence on others. Conceding the evidence is not abundant, it must be borne in mind it is not contradicted. There is evidence of the desire of the employees, and this is an element the Board can consider. The evidence as to the laundry being a separate integrated unit, housed and operated separate and apart from other departments and furnishing laundry for the Hotel proper is evidence of a relationship between the unit proposed and the operation, organization and management of the employer's business. The evidence, that included in the unit proposed are operators of ordinary laundry equipment such as washers, dryers, mangles, shakers and wash room people suggest all included employees are eligible for membership in the Union involved. Moreover, the latter evidence indicates a related group of workers with similarity of working conditions.

When there is evidence or reasonable inferences that a laundry maintained by a hotel company is departmentalized and separated from other operating departments of the company, its employees are carried on a separate payroll, it is referred to and designated by the Company management as the laundry department, and its employees have similarity of working conditions and are all engaged in work which is ordinarily performed by laundry workers, it is difficult to understand why any contention should be made that the Labor Board abuses its discretion when it concludes all members of the department, excepting clerks and supervisors, make up an appropriate unit. In our opinion to include all workers, except clerical help and and supervisors is an appropriate inclusion—exclusion line unless some reasonable showing is made that the group selected is not the usual homogeneous laundry group but is so heterogeneous that it will not be able to insure to employees the full benefits of the Act. No such showing has been made in this instance.

The quoted evidence together with reasonable inferences that the Board could make is sufficient, in the absence of any testimony to the contrary, to sustain the findings of

454

the Board. There is no evidence in the record that the designation made by the Board is inappropriate, is prejudicial to the employer or that any one of the units mentioned in Section 49-1-17(b), U. C. A. 1943, is more appropriate. We, therefore, conclude that the Board did not abuse its discretion in designating the laundry workers as an appropriate unit. Appellant's assignment of error on this point is overruled.

The next matter of which the Hotel complains is that portion of the Board's order in which it directed the Hotel Company to

"cease and desist from any further unfair labor practice as set forth in Sec. 49-1-16, Subsection (1), Paragraph (d) Utah Code Annotated, as amended."

Counsel refers us to that portion of the cited statute making it an unfair labor practice

"to refuse to bargain collectively with the representative of a majority of his employees in *any collective bargaining unit* * * *"

and contends that the Board, by making the statute part of its order, has directed the Company to cease and desist from refusing to bargain with not only its laundry workers, but *any* of the Company's bargaining units. While it is possible to reach this conclusion by adopting the strained construction of the order and the statute as contended for by counsel, considering the scope of the present dispute and the issues involved, no one could be misled by the order as stated. The assignment of error is without merit.

The Company's last assignment of error is that the Board failed to acquire jurisdiction of the case because it did not allege that involved therein was a question affecting intrastate commerce or the orderly operation of industry and that its findings were likewise erroneous for the same reason. The complaint alleges, and in its answer the Company admits, it is a corporate employer within the meaning of the Act engaged in business

in Salt Lake City, Utah. The complaint further alleges the Company is engaged in an unfair labor practice in refusing to bargain with a duly certified representative of its employees. While the Board did not use the statutory phraseology of "intrastate commerce or the orderly operation of industry" it has alleged facts describing a labor dispute falling within that statutory classification.

Affirmed.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.