## UTAH LABOR RELATIONS BOARD v. BROADWAY SHOE REPAIRING CO.

No. 7439.   Decided November 1, 1951.   (236 P. 2d 1072.)

See 56 C. J. S., Master and Servant, sec. 28(95). Labor relations statutes, determining bargaining agents under. 31 Am. Jur., Labor, sec. 100; 123 A. L. R. 624.

*Clinton D. Vernon*, Atty. Gen., *Allen B. Sorensen*, Deputy "Atty." Gen., for plaintiff.

*Louis H. Callister*, Salt Lake City, for defendant.

WADE, Justice.

The Utah Labor Relations Board, herein called the board, asks this court to enforce its order that the Broadway Shoe Repairing Company, herein called the company, cease and desist from refusing to bargain collectively with Teamster's Local Union #222, herein called the union, which is the certified bargaining agency of the company's shoe repairmen employees.

The company makes three contentions: (1) That there is no evidence on some vital facts which the board must investigate before designating the unit appropriate for collective bargaining purposes; (2) That the board erroneously made findings of fact based only on the reports of investigators which are not otherwise supported by any evidence; and (3) That the board abused its discretion in designating all of the shoe repairmen in the Broadway Shoe Repair Shop, Auerbach's Store, and the two stores of J. C. Penney Company as the appropriate collective bargaining unit.

On June 30, 1947, the union petitioned the board to certify it as the collective bargaining agent of all the shoe repairmen employed by the company in all of the above mentioned stores. After a public hearing on July 21st and a report made by its investigator, the board made the following certification:

"A unit appropriate for the purpose of collective bargaining consists of all shoe repairmen of Respondent located in the Broadway Shoe Repair Shop, 69 East Third South, Auerbach Company, J. C. Penney Company, 213 South Main, and J. C. Penney Company, 1033 East 21st South, and excluding specifically foremen who can effectively recommend hiring or firing and other supervisory or clerical personnel."

On September 26, 1947, at the suggestion of the Union, this certification was amended to conform to the wording in other somewhat similar cases to read as follows:

"A unit appropriate for the purpose of collective bargaining consists of all shoe repairmen and excluding shine men, counter clerks, part-time workers and supervisory employees with power to hire or fire located in the Broadway Shoe Repair Shop, 69 East Third South, Auerbach Company, J. C. Penney Company, 213 South Main, and J. C. Penney Company, 1033 East 21st South."

There have been three hearings on this matter: The first on July 21, 1947, to determine the collective bargaining unit and agency which resulted in the designation of the above collective bargaining unit and the certification of the union as the collective bargaining agency. The second on December 18, 1947, after which on the recommendation of the trial examiner the board found the company guilty of an unfair labor practice by refusing to bargain collectively with the certified bargaining agent and ordered it to cease and desist therefrom. And the third was held on March 18, 1948, on the objections by the company to the cease and desist order, which hearing was before the entire board. At each of those hearings the company had present an agent and was represented by counsel and introduced evidence. Besides these hearings, there have been several reports by investigators for the board and an arbitrator's decision on the meaning of the amended certification and the final order.

The evidence shows that the company operates four different shoe repair shops in Salt Lake City: One on Third South Street, known as the Broadway Shoe Repair Shop which is operated under the company's exclusive management and control, and three others which are concessions in department stores; one in the Main Street store and another in the Sugarhouse store of J. C. Penney Company; and the third in Auerbach's store. The company employes more than one employee in each of these concessions which in-

cludes two repairmen each for Auerbach's and J. C. Penney's Main Street store and only one repairman for Penney's Sugarhouse store. One of the repairmen in each concession is the foreman in charge who does regular repairing work and supervises the concession in the absence of the district supervisor; such foreman does not have the power to but may effectively recommend hiring and firing of other employees. All of the company's employees in each concession are paid by check issued from the store where the work is performed; the foremen receive extra pay for their work as foremen in addition to their pay as repairmen. The company's employees in these concessions are subject to the general store and personnel policy and general supervision by the store where they are working which store could discharge any such employee who refused to comply with such policy or supervision.

The investigator's report of August 18, 1947, recommends that the appropriate collective bargaining unit should include the repairmen employed in all four shops for the reason that employees are shifted from one shop to another whenever necessary. And the board's final order on this subject says:

"* * * The Board, in two previous decisions, found that the Respondent's employees at its various shops in the Salt Lake City area comprised an appropriate bargaining unit.

"The Board recognizes that there should be a working relationship or an intermingling of employees in order to hold that such a unit would be appropriate. On further investigation conducted by the Board, the Board finds that there is an intermingling of employees from the Respondent's establishment, 69 East Third South, with the Respondent's employees at the J. C. Penney Stores and the Auerbach Company, namely, that should an employee be ill or is on vacation or other similar circumstances, he is replaced by employees from the Respondent's Broadway Shoe Repair Store."

This is the only evidence in the record of shifting of employees from one shop to another. The company argues that this fact is not proved by any evidence and therefore the

board should not consider it in determining the appropriate collective bargaining unit and since the determination is based on that fact it must be annulled.

On March 2, 1948, before the final order was entered, an arbitrator's decision was filed on the question of which employees are included in the collective bargaining unit under the amended certification. It concludes that the repairmen who act as the concession foremen are not "supervisory employees with power to hire or fire" because:

"* * * the full responsibility for the profitable operation of the business is not invested in the manager of the store but in the supervisor of the district. Additions to the working force of a store are approved or disapproved by the supervisor of the district and the installation or the increase of any additional machinery is also vested in the supervisor of the district. Recently an addition in the working force was added at the store involved with no consultation with the manager of the store. Said addition worked ony two days and was removed from the operation of said store at the discretion of the supervisor of the district. This definitely should show that full authority is not placed in the person involved in the controversy.

"It is the writer's opinion that the Utah Labor Relations Board meant that supervisory employees with the right to hire and fire within this unit would have the authority to add to their operating staff if added business would require such action without consultation with any other party and that the same criterion would apply if it should become necessary to reduce the personnel. It is therefore, my opinion that the manager of the Respondent does not come within the category of a supervisory employee with the power to hire and fire."

Thus, the amended certification includes these foremen who were excluded by the original certification, but in both cases a majority of the employees in the unit designated the union as their bargaining agency. The facts recited in this decision showing that changes in the personnel had been made without consulting the foreman of the concession involved are not otherwise disclosed in the record, which makes an additional showing that the board sometimes relied on facts not shown by evidence adduced at the hear-

ings but were known to the board only through its investigations.

The company's first contention is not well taken. This same argument, that in every case before determining what·is the appropriate collective bargaining unit the board must investigate a number of subjects of ██ which in this case the evidence discloses no investigation was rejected in the two recent cases of *Hotel Utah* v. *Industrial Commission,* 116 Utah 225, 209 P. 2d 235, and *Id.,* 116 Utah 443, 211 P. 2d 200, 203. In the last of these cases we said:

> "The authority to determine which type of unit is appropriate is vested in the Board and not this court. If the discretion so granted is reasonably exercised, the finding cannot be set aside. It is only in those cases wherein we can find the Board has abused its discretion that we may interfere. And if appellant seeks to reverse the finding of the Board because of an abuse of discretion in selecting the appropriate unit the burden is on it to establish the abuse."

In those cases the evidence was much more restricted than in this case. Here there were three hearings and the company participated and introduced testimony in each one of them. We think the coverage of the evidence was ample to reasonably justify the board in designating the unit appropriate for collective bargaining. The case of *Pittsburg Plate Glass Co.* v. *N. L. R. B.,* 313 U. S. 146, 61 S. Ct. 908, 85 L. Ed. 1251; 313 U. S. 599, 61 S. Ct. 1093, 85 L. Ed. 1551, merely recites that in determining what is the appropriate collective bargaining unit the board *has taken* into consideration certain factors which it enumerates. It does not sustain the company's contention that evidence must be introduced on each of the enumerated subjects. *N. L. R. B.* v. *National Mineral Co.,* 7 Cir., 134 F. 2d 424, certiorari denied *National Mineral Co.* v. *N. L. R. B.,* 320 U. S. 753, 64 S. Ct. 58, 88 L. Ed. 448, says an unchallenged prima facie showing in the petition is sufficient.

On the second contention, in the absence of an express or implied admission, the board may not base its designation of the appropriate collective bargaining unit on a fact which is not reasonably inferable from the evidence. Under section 49-1-18, U. C. A. 1943, subdivision (b) ■

"the rules of evidence prevailing in courts of law or equity shall not be controlling"

and under subdivision (e)

"findings of the board as to the facts, if supported by evidence, shall be conclusive." *Building Service Employees Local No. 59* v. *Newhouse Realty Co.*, 97 Utah 562, 95 P. 2d 507.

Here the board based its determination of the appropriate bargaining unit on the fact that repairmen were interchangeable from one shop to another. Whether or not the evidence would support the board in its designation of such unit as the appropriate collective bargaining unit without the above mentioned fact is not before us for decision, for since it is the province of the board and not this court to determine what is the appropriate unit for collective bargaining purposes and the board has said in substance that without such fact it would have designated a different unit in order to sustain such designation, we must conclude that the finding of such fact may be reasonably inferred from the evidence.

The company does not assert nor offer to prove that these employees were not used interchangeably in its various stores. Its claim rests on the very technical grounds that the investigator's report may not be considered by the board in determining that question and that there is no other evidence in the record to sustain such finding. The investigator's report was made August 18, 1947, prior to the last two hearings before the board and has been a part of the files in this case and available to the parties since that time. As previously pointed out, the final order of the

board relied on that fact to sustain its designation of the appropriate collective bargaining unit. If the company claimed that the report was erroneous, it could have introduced evidence to that effect on either of the later hearings, or in case it was not aware of the fact that it was being relied upon as the basis of the board's designation of the appropriate bargaining unit until the final order it could have asked permission even from this court to produce evidence to the board on that question. For under section 49-1-18 (e) supra, objections not urged before the board, unless failure to urge such objections are excused by extraordinary circumstances, shall not be considered in this court, but this court may, on application of either party and on proper showing order the board to take additional evidence. This objection was not urged before the board and had it been, evidence from both sides would have been readily available. If the failure to urge this objection was from excusable neglect, the company could still open up this question in this court and obtain a hearing on that question but it has failed to apply for any such relief.

Though court rules of evidence with their formalities are not applicable to hearings before the board, still the material facts relied on to support the board's orders must be reasonably inferable from the evidence and the procedure adopted must afford all parties a reasonable opportunity to present their evidence. *Building Service Employees* v. *Newhouse Realty Co.,* supra. This finding is reasonably deducible from the evidence and the parties had a fair opportunity to refute it. The board's investigators should be fair, disinterested and impartial to both sides, and there is no claim that such was not the case here. Under such conditions, it would seem very improbable that such investigator would incorrectly report the facts, or determine disputed facts without noting that there was a conflict in the evidence and without reliable information of such fact. It is also very improbable that the company would fail to produce any evidence on this question

if the existence of such fact were doubtful without asking for the opportunity to reopen the case after it was brought to this court. So we conclude that this finding was reasonably deducible from this evidence.

Under the Model Code of Evidence of the American Law Institute, Rule 515 dealing with hearsay provides:

"Rule 515. Written Statements by Public Officials.

"Subject to Rule 519, evidence of a writing made as a record, report or memorandum of facts and conclusions concerning an act, event or condition, unless specifically privileged from disclosure by a statute requiring it to be made, is admissible as tending to prove the truth of the matter stated therein if the judge finds that

      \*      \*      \*      \*      \*

"(b) it was a function of the official acting personally or through his subordinates

      \*      \*      \*      \*      \*

"(iii) to investigate the facts concerning the act, event or condition and to make findings or draw conclusions about it."

Rule 519 referred to in Rule 515 provides:

"Rule 519. Discretion of Judge to Exclude Evidence Admissible Under Rules 515, 516, 517 and 518.

"The judge in his discretion may exclude evidence admissible under Rules 515, 516, 517 and 518 if he finds that the party against whom it is offered has not been furnished a copy of the writing or of its material portions a reasonable time before the evidence is offered."

The Model Code is the product of some of the best students of evidence in this country. It was carefully worked out after years of consideration and discussion. The foregoing provisions, though not a part of the court rules of evidence, provide a reasonable standard of what may be considered as evidence in a hearing of this kind where the statute expressly provides that the court rules of evidence in such a hearing are not controlling. Under the foregoing provisions of that code, this report would be admissible in evidence and each side was given a fair opportunity to present its case. From that evidence, under the circumstances

of this case, the questioned finding could reasonably be drawn. That is all that is necessary under our statute as construed by this court.

The company's third contention is equally groundless. The fact that the employees in the concessions are subject to the store and personnel policy and general supervision of the stores where they are working does not present any insurmountable difficulty. A labor contract could be made flexible enough to meet these minor differences in store policy. In order to draw a contract covering all these employees, it is not necessary that all work in the same store on the same hours of the day or that all such employees be free from the various store personnel regulations. Of course, those stores are subject to the state law against unfair labor practices the same as is the employer, the Broadway Shoe Repairing Company. A collective bargaining unit consisting of the employees of defendant factories and scattered over a number of states is not uncommon. *Pittsburg Plate Glass Company* v. *N. L. R. B.*, supra. The order of the board that the company cease and desist from its unfair labor practice is affirmed and enforcement thereof ordered with costs to petitioner.

WOLFE, C. J., and McDONOUGH, and CROCKETT, JJ., concur.

HENRIOD, J., not participating.