No. 19,535.

DRY CLEANERS AND LAUNDRY WORKERS LOCAL UNION
No. 304, ET AL. *v.* SUNNYSIDE CLEANERS AND
SHIRT LAUNDRY.
(360 P. [2d] 446)

Decided March 20, 1961.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission of Colorado.

Mr. PHILIP HORNBEIN, JR., for plaintiff in error Dry Cleaning and Laundry Workers Local Union No. 304.

Mr. HAROLD D. TORGAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

BEFORE us for review in this case is a judgment of the district court of the City and County of Denver which vacated an award of the Industrial Commission confirming an election held to determine whether the Dry Cleaning and Laundry Workers' Local Union No. 304 should be the bargaining agent for certain employees of the Sunnyside Cleaners and Shirt Laundry. The parties will be referred to respectively as "Union," "Commission" and "Employer."

The Union commenced this proceeding by filing a petition for election in which it sought to be named as bargaining agent in accordance with C.R.S. '53, 80-5-4. The petition stated that the employees sought to be represented were " * * * All production and miscellaneous workers in the Dry Cleaning and Laundry operation." In addition, the petition, a mimeographed form furnished by the Commission, contained this language:

"The bargaining unit for which the petition for election is filed claims to represent all employees in this state or only those employed in certain plants or divisions. The address of each plant or division and the

number of employees in each eligible for membership in the bargaining unit are 1420 West 46th Avenue, Denver, Colorado — number eligible — 13; 5145 West Alameda Avenue; 7414 Grandview; 1262 South Sheridan Blvd. and 5840 West 38th Avenue — 0."

It also included the following entry:

"The classes of employees not eligible to participate in the bargaining unit election are 'drivers.' "

Attached to the petition on a form also provided by the Commission on which eligible voters were to be listed were the names of thirteen employees. The petition showed that the employer operated his business in five locations, the main plant being at 1420 West 46th Avenue, and four collecting stations located in various parts of the city at each of which two women were employed as "countergirls" to receive and deliver the cleaning and laundry work. One woman worked as a countergirl at the main office, and the remaining employees at the principal plant were engaged in the cleaning and laundering operations.

A list of twenty-two employees submitted by the employer included the names of the eight countergirls attached to the branch offices. The Commission then compiled a tentative polling list and on it listed fourteen names from which were excluded all of the countergirls at the branches with the exception of one Orcelia Goodfellow. This tentative polling list and a notice of election was submitted to the employer and the Union, together with a letter from the secretary of the Commission. The letter explained that after a conference with a representative of the Union his (the secretary's) understanding of the Union's position was that workers employed in the branch offices did not constitute "production and miscellaneous workers"; that the general custom of the industry was not to include branch employees in this category and that therefore the names of such employees had not been included on the tentative polling list. The employer objected to the tentative polling list

and to the omission of the countergirls, and pointed out that Orcelia Goodfellow was a countergirl at one of the branch offices. Since the employer contended that all the countergirls should be allowed to vote as employees, it did not object to including the name of Miss Goodfellow on the polling list, but sought to have the names of the other seven listed also. This objection was filed with the Commission on September 10, 1958, and on September 16, 1958, the Commission ordered that the tentative polling list be approved and adopted as a final polling list. On September 18, 1958, an election was held with a total of twelve votes being cast. Two additional ballots were challenged and not voted. The result of the election was seven in favor of the Union and five against. One of the challenges was made by the Union to the ballot of Orcelia Goodfellow on the ground that she was a countergirl and not within the group of employees sought to be represented.

The employer then petitioned the Commission for review of its order of September 16, denying the seven countergirls the right to vote and contended that the election based thereon was invalid. The matter was reviewed by the Commission and the order of September 16 was adhered to.

The employer then filed a complaint in the district court seeking review of the order of the Commission and alleging error in excluding the names of the seven countergirls from the list. It argued that this action violated C.R.S. '53, 80-5-2 (3), and prayed that the countergirls be included in any subsequent election. On July 1, 1959, the trial court remanded the matter back to the Commission for the purpose of holding a hearing on the issues raised by the complaint. At a hearing on August 13, 1959, the Commission brought out that the Union's position was that it had sought an election among the operational employees (in the main plant only) and that such employees constituted a separate "class, division, department or plant" within the

meaning of the statute. The Commission's record was returned to the court on October 1, 1959, and on April 15, 1960, the matter was heard and the award of the Commission vacated. The trial court stated as the basis for its decision:

"This Court feels that all of the employees of the Sunnyside Cleaners and Shirt Laundry should be entitled to vote. The mere fact that they were placed in various parts of the city, none doing different work, but all working on behalf of the Sunnyside Laundry, I feel that they should also have been entitled to vote.

"It is the Order of this Court that this matter be referred back to the Industrial Commission and that the election — I think I'm saying it right — should be declared null and void, and a further hearing had."

This judgment is before us for review on writ of error. The Union and the Commission maintain that the employees who sought to be represented were those in the main plant only and that they at all times constituted a proper electoral body under the terms of the Labor Peace Act. The employer, on the other hand, urges the following points in support of the judgment:

1. That the Commission erroneously construed the employees at the main plant as constituting a "craft, division, department or plant" under the statute.

2. That the Union petitioned for an election among all the eligible employees and is thereby bound.

3. That the Commission failed to make sufficient findings of fact following the hearing on August 13, 1959.

4. That the Commission erred in allowing challenges to votes at the time of the election and that this error invalidates the election.

I. *The propriety of determining the employees at the main office and plant to be a voting body for the selection of a collective bargaining unit.*

The Colorado Labor Peace Act provides that a collective bargaining representative, referred to in the statute as a "collective bargaining unit," may be selected by a

majority of the employees engaged in "a single craft, division, department or plant." C.R.S. '53, 80-5-2 (6). It further provides in 80-5-5 (2) that:

"Whenever a question arises concerning the selection of a collective bargaining unit, as defined in section 80-5-2, it shall be determined by secret ballot, and the commission, upon request, shall cause the ballot to be taken in such manner as to show separately the wishes of the employees in any craft, division, department or plant as to the selection of the collective bargaining unit."

C.R.S. '53, 80-5-5 (5) declares in part that:

"* * * On request of any employees said list shall be prepared so as to show separately what employees are entitled to vote for general representation of the employees and what employees are entitled to vote separately for craft representation or representation of any one of several plants of a common employer. * * *"

The Commission, in response to the objections by the employer to the tentative polling list which excluded the girls employed at the branch collection stations, issued its supplemental order stating its reasons for approving the employees at the main office and plant as a unit appropriate to select its own representative. This order stated:

"The Commission finds that the so-called countergirls which the employer claims are regular employees, are engaged in work at various 'outlets' and are not employed in the laundry or subject to the same hours, working conditions or supervision applicable to employees of the laundry proper.

"By general custom of the laundry industry the Unions have habitually failed to claim jurisdiction of these girls in 'outlet' positions and the laundry owners have, when the question has arisen, resisted the inclusion of such part-time unsupervised personnel being included in the contract.

"The Commission, therefore, finds that it would be

unwise to establish a precedent of including such personnel as employees under the Labor Peace Act.

"The Commission further finds that the seven (7) countergirls claimed as employees are in fact not eligible to vote in an election to determine a Collective Bargaining Unit for production and miscellaneous workers."

As we understand the position of the trial court and the employer, the Commission erroneously applied the words of the statute "craft, division, department or plant" to the facts before it in the petition of the Union.

It can be readily seen from a reading of the portions of the statute set out above that there is a strong policy in the Labor Peace Act in favor of fractional representation of the employees of one employer. Whether the Commission was within its power in accepting the Union's request that the employees at the main office and plant be separately classified on the basis that such employees constituted a unit allowed by the statute to be separately represented is a form of inquiry that is familiar in the labor law field. It has not, however, been before this Court previously. The important matter to be considered is the correctness of the Commission's application of the statutory language to the facts presented by the petition and the informal conference. See *NLRB v. Coca-Cola Bottling Co.,* 350 U.S. 264, where the Court considered the application of the statutory term "officers" to facts there presented. The answer to our question is not one which can be discovered from mere scrutiny, however careful, of the bare words of the statute. See *NLRB v. Hearst Publications,* 322 U.S. 111. These are words drawn out of custom and usage of industrial and business organization, and they must be approached with an awareness of their origin. The Commission was mindful of these considerations in arriving at its conclusion that the group of plant employees constituted a "craft, division, department or plant," and absent a showing that such determination was unlawful a court of review is not justified in voiding

its ruling. See 4 Davis, *Administrative Law* 189-270. We think it plain that determinations of this nature have been left by the statute to the informed discretion of the Commission empowered to administer the law. See *Hotel Utah Co. v. Industrial Commission,* 116 Utah 443, 211 P. (2d) 200; *Ray-O-Vac v. Wisconsin Employment Relations Board,* 249 Wis. 112, 23 N.W. (2d) 489, 174 A.L.R. 1267. There is ample evidence in the record in support of the finding and order of the Commission.

II. *Did the Union request to represent only the workers employed in the main plant?*

 The statute 80-5-5 (2), does not specify any particular point in time when a request for a separate election among a certain craft, division or department must be made. The record in the present case indicates clearly that such request was made, and we can see no abuse on the part of the Commission in the exercise of its discretion in honoring this request. The transcript of the hearing before the Commission following remand from the trial court contains the following testimony by the secretary-treasurer of the Union:

"Q. Now, has it been the position of the Union that all of the employees of Sunnyside Cleaners should vote in that election? Is that what you were petitioning for? A. We were petitioning just for the employees at the main plant. Q. And was that position of the Union made clear in the conference held up here in the Industrial Commission? A. The Union, I believe, left that impression. I mean, that was their intent and purpose, to have the election at the main plant."

If any misimpression had been left from the petition itself which, after a fair reading would seem to have been unlikely, it is evident that any misunderstanding between the Union and the Commission was cleared up at the informal conference at which the employer was represented.

III. *The failure of the Commission to make additional formal findings following the supplemental hearing af-*

*fords the employer no basis for challenging the action of the Commission.*

■ The determination of the proper group of employees to be represented was a matter for the Commission, and the Commission had fully stated and reviewed its reasons for approving an election among the plant workers only. Further findings would not have provided any new light on the subject and the hearing itself furnished no occasion for any additional findings.

IV. *Did the Commission err in allowing challenges to votes to be made at the time of the election after having previously certified the polling list?*

■ The employer relies on our decision in *Graham Furniture Co. v. Industrial Commission,* 138 Colo. 244, 331 P. (2d) 507 (decided Nov. 10, 1958) in support of its contention that no change in the polling list can be made after its approval by the Commission. The Union and the Commission do not challenge the applicability of the *Graham* case but contend that the principle there adopted may not be invoked before this Court, the employer having failed to raise the issue before this Court at any time after the election or even in the district court. Since the propriety of this challenge was not raised prior to appearance in this Court, present consideration of the question is not warranted and the *Graham Furniture* doctrine that challenges made on the occasion of the election are not entitled to be considered does not apply.

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment affirming the order of the Industrial Commission.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.